# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LINDA J. PUTMAN,                )
                                )
        Plaintiff,         )
                                )
v.                              ) Case No. CIV-07-026-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
        Defendant.         )

## OPINION AND ORDER

Plaintiff Linda J. Putman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 3, 1964 and was 41 years old at the time of the ALJ's latest decision. She completed her education through the twelfth grade, but was developmentally delayed with learning disabilities. Claimant took special education classes. Claimant previously worked as a cleaner, hotel maid, and assembly line worker. Claimant alleges an inability to work beginning in May 6, 2002 due to worsening spasms and pain in both of her legs and her back which cause her to lose her balance and fall. These

conditions are alleged to be secondary to Claimant's spastic cerebral palsy from which she has suffered since childhood.

## Procedural History

On June 18, 2002, Claimant filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On February 26, 2004, Claimant appeared at a hearing before ALJ Thomas Bennett in Ardmore, Oklahoma. By decision dated July 30, 2004, the ALJ found Claimant was not disabled at any time through the date of the decision. On July 28, 2005, the Appeals Council vacated the ALJ's decision with instructions for re-evaluation of the evidence.

On April 13, 2006, Claimant again appeared for a hearing before ALJ Edward Thompson in Ardmore, Oklahoma. On July 28, 2006, the ALJ issued an unfavorable decision. On November 20, 2006, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform sedentary work as an assembly worker,

machine tender operator, and bench and table laborer.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to demonstrate he considered all of the evidence; (2) engaging in an improperly selective discussion of the evidence and disregarding significantly probative evidence; (3) failing to properly evaluate the evidence under the relevant factors for consideration of Claimant's pain and other subjective limitations; (4) failing to properly weigh the medical opinions of the treating physicians in the record; (5) failing to properly consider Claimant's pain; and (6) failing to find Claimant had a severe mental impairment.

**Consideration of All Relevant Evidence in the Record**

Claimant contends the ALJ failed to consider all of the medical evidence in the record but, instead, referenced only a few of the records and then relied upon the review of the records done by the agency physician. Claimant suffers from cerebral palsy - a condition existing since she was a child. (Tr. 91). Claimant was primarily treated through the years by Dr. James Forrestal. On June 28, 2001, Claimant was attended by Dr. Forrestal, complaining of pain starting in her left thigh and radiating through her hip. Claimant was prescribed Celebrex and Lortab. (Tr. 215). This pain continued through August of 2001. (Tr. 214).

5

In November of 2001, Claimant was again seen by Dr. Forrestal complaining of nervousness and shaking. Claimant complained of lots of stress, crying, not eating or sleeping. She stated that she "broke down." She had taken her sister's Xanax, but denied being depressed. Dr. Forrestal diagnosed Claimant with depression and anxiety and prescribed medication. (Tr. 213).

In January of 2002, Claimant reported to Dr. Forrestal that she was having trouble sleeping, gets shaky if she goes more than two days without Xanax, and gets upset and starts shaking when minor things happen to her at home especially related to her children. (Tr. 401).

On March 25, 2002, Claimant was attended by Dr. James W. Carlson, an orthopedist. Claimant complained of back pain with shooting pain down her left leg. Dr. Carlson noted Claimant waled with a limp to the left, has a normal stance, can hyperextend her back a few degrees and bend forward within 4 inches of touching her toes, stands on her tiptoes, has difficulty standing on her heels, has knee and ankle jerks, good leg sensation, straight leg raising to 80 degrees which causes tightness in the left popliteal area, and experienced tenderness of the lower lumbar spine on the left and the left gluteal area. (Tr. 183, 186). A lumbar MRI scan was normal with no disc rupture. Dr. Carlson diagnosed lumbar strain. (Tr. 183). Dr. Carlson prescribed Darvocet, discontinued Lortab,

and prescribed stretching exercises. He stated Claimant could begin light housecleaning in two weeks and resume full activities in three weeks. Id.

On April 1, 2002, Claimant saw Dr. J. Patrick Evans with similar complaints of pain. On examination, he determined Claimant "has considerable spasticity residual in the left lower extremity present but less in the right. She walks with a tip toe gait on the left side. She has no significant functional leg length discrepancy that I can determine." He concluded "she basically has as static problem that she is going to have to simply live with." (Tr. 191). The following day, Claimant was attended by Dr. Forrestal, who characterized her cerebral palsy as a "light case" in her legs. (Tr. 212).

On August 13, 2002, a Residual Functional Capacity Assessment form was completed by Dr. Luther Woodcock, an agency physician. He found the primary diagnosis of Claimant's condition was cerebral palsy. (Tr. 193). He limited her occasional lifting and carrying limitations at 10 pounds, her frequent lifting and carrying at 5-7 pounds, her ability to walk and/or stand at least 2 hours in an 8 hour day, ability to sit at about 6 hours in an 8 hour day, with unlimited pushing and pulling. He found she had spasticity residual in her lower extremity. (Tr. 194). He also found Claimant suffered from depression, NOS, and anxiety, NOS. (Tr.

196-197). He found a mild limitation upon Claimant's ability to engage in activities of daily living and maintaining social functioning. (Tr. 199).

A Psychiatric Review Technique form was completed by Dr. Sally Varghese on August 19, 2002 with regard to Claimant. She found Claimant's mental impairments of Affective Disorders and Anxiety-Related Disorders were not severe. (Tr. 201).

On August 26, 2002, Claimant was attended by Dr. Larry Lovelace. She complained for worsening pain in her hips and legs. Dr. Lovelace diagnosed Claimant with chronic pain, myalgia, anxiety, and a history of cerebral palsy. (Tr. 205-207).

On September 17, 2002, Claimant saw Dr. Forrestal. He noted muscle spasms and pain. He prescribed Xanax and pain medication. (Tr. 211).

On November 11, 2002, Claimant reported to the emergency room, complaining of pressure pain in the upper back which was worse with deep breaths and motion. She was diagnosed with muscle spasms and prescribed Norflex. (Tr. 219-223).

In January of 2003, a Psychiatric Review Technique form was completed by Dr. Ron Smallwood. He found a non-severe impairment of Affective Disorder and Anxiety-Related Disorder. His diagnosis and findings on limitation did not differ from the prior form completed on Claimant. (Tr. 225-229). Similarly, a Residual

8

Functional Capacity Assessment form was completed on Claimant by Dr. Thurma Fiegel. It, too, did not differ materially from the prior form. (Tr. 230-233).

Claimant also was attended by a neurologist, Dr. Anton Coleman at the O.U. Medical Center in January of 2003, again with back and leg pain. He found Claimant's reflexes to be reduced in her upper body, with decreased sensation to midcalf, a clubbed high arch and wide-based gait on her tip toes. Claimant's MRI on her lumbar spine was normal. (Tr. 235). Dr. Coleman diagnosed Claimant with possible spinal stenosis of the lumbar spine, Stiffman Syndrome, and muscle spasms. He referred Claimant for an EMG and prescribed medication. (Tr. 234-236, 240-241).

On May 14, 2003, Claimant was seen by Dr. Peggy Wisdom and Dr. Amir Ilyas, neurologists at the O.U. Medical Center. Claimant's pain complaints continued and appeared to worsen with a stressful event concerning her daughter. Dr. Wisdom noted reduced sensation to temperature and pinprick up to the knee. An MRI was ordered of the cervical spine which ruled out cord compression. Claimant began taking an increased dosage of Zanaflex and a reduced dosage of Valium. (Tr. 248). By September of 2003, Claimant's pain continued but her condition improved according to the neurologists. Her legs were spastic but her arms were better, with sensation intact. (Tr. 249). Claimant continued with medication pain

9

management with these neurologists through February of 2004. (Tr. 388, 390).

Claimant returned to the O.U. Medical Center n March 10, 2004, complaining of spasms in her legs, hips, back, and neck. She was to be placed on a medication pump, when funding was available. The physician attending noted spasms in Claimant's lower extremities with contractures in the ankle and plantar flexor. Claimant was noted to have a mildly spastic gait. (Tr. 391-392).

In August of 2004, Claimant was attended by Dr. Marc Lenaerts at the O.U. Medical Center. Claimant reported that she did not get the pump because she could not get disability insurance. Therefore, she was prescribed alternative medications. She expressed unhappiness with these medications because she continued to experience "unbearable spasms" whether she is on or off the medication which causes her to take extra Valium. (Tr. 374).

On September 23, 2004, Claimant was seen in the emergency room after falling and sustaining a minor head injury. She also had an acute cervical and thoracic strain. (Tr. 354). Claimant had felt dizzy all day. She was also noted to walk with her left foot inverted. Medication was prescribed. (Tr. 355, 358).

On October 29, 2004, Claimant sustained another fall, suffering multiple contusions. (Tr. 343). She reported "frequent falls" with pain and soreness. She is noted to be awaiting

bacoflen pump placement for spasticity.  The attending physician noted no LOC, no new numbness, tingling, weakness, or incontinence.  Claimant was ambulatory with flat affect, cooperative and in no apparent distress.  (Tr. 345).

Claimant was also seen by Dr. Forrestal during this time.  He prescribed Lexapro for depression, altering the dosage from a prior prescription.  (Tr. 397).

On December 21, 2004, Claimant reported to the emergency room having experienced a witnessed episode of syncope while cooking dinner.  Claimant was diagnosed with hypomagnesemia (low magnesium), autonomic neuropathy, and cerebral palsy and prescribed medication.  (Tr. 326-330).

On March 23, 2005, Claimant returned to the neurologists at the O.U. Medical Center.  She complained of spasms in her legs which started in her legs and upper extremities.  Claimant's falling episodes were believed to be associated with the baclofen medication, which can cause hypertension.  The dosage was reduced.  Claimant was also prescribed Trazodone to aid sleeping.  (Tr. 371-372).  Upon visiting Dr. Forrestal again, Claimant received an increase in dosage of Celexa, an anti-depressant.  (Tr. 394).

On April 20, 2005, Claimant reported to the emergency room after falling and experiencing neck pain.  She was diagnosed with a cervical strain and prescribed Lortab.  (Tr. 320-323).

11

On June 2 and 15, 2005, Claimant was attended by Dr. Lenaerts. She was taking baclofen and Valium for her spasticity. She began experiencing dizziness, light headedness and vertigo which results in her falling. Her dosage of baclofen was reduced. She was no longer passing out and was feeling better. Power was 5/5 in all of her limbs. Her gait was atalgic. She was noted as being "severely spastic." (Tr. 367, 369). The reduced dosage of baclofen made her feel better but her spasms had returned and she was shaking. Claimant's ears were also evaluated and no vestibular source for her balance problems were found. (Tr. 369).

On December 14, 2005, Claimant was evaluated by Dr. Sadia Yasser, a neurologist. Claimant reported to the medical center due to increased spasticity. With medication, the condition improved. Claimant stated she did not have any more passing out episodes after the reduction in the baclofen medication. (Tr. 439). Claimant still awaited a baclofen pump. (Tr. 440). She later returned to the emergency room complaining of low back pain. She received a prescription of Lortab. (Tr. 441-442).

In his decision, the ALJ relies heavily upon the opinions of the agency physicians, Dr. Woodcock and Dr. Fiegel for concluding Claimant did not meet a listing. Further, the ALJ took the testimony at the hearing of Dr. Susan Blue, a neurologist, whose opinion coincided with those of Dr. Woodcock and Dr. Fiegel. (Tr.

16). With regard to Claimant's allegations of a mental impairment, the ALJ adopted the findings of agency physicians Drs. Varghese and Smallwood in concluding Claimant did not suffer from a severe mental impairment. (Tr. 16-17). Outside of the opinions of the agency physicians and testifying expert, Dr. Blue, the ALJ only discussed Claimant's visit in March 25, 2002 , April 1, 2002 and August 8, 2003 to treating physicians. The ALJ also discussed Claimant's December 14, 2005 visit to the emergency room and noted the record indicating Claimant's "spasticity did improve." (Tr. 17). Beyond this brief recitation of the evidence, the ALJ took the testimony of Dr. Blue and received her impressions after her stated review of Claimant's medical record. It is not stated in the decision that the ALJ actually reviewed the medical records himself before denying Claimant's benefits.

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

13

In this case, the ALJ only demonstrates he personally reviewed a part of the medical record and only those portions that appear favorable to his ultimate finding of nondisability. The continuing problems experienced by Claimant of spasticity and pain and the effects those conditions upon her RFC are not adequately addressed in the ALJ's decision, requiring remand for consideration of the totality of the medical record by the ALJ.

Moreover, it appears Claimant's testimony was rejected without any discussion of the limitations to which she testified. She is simply found to be incredible. While the ALJ finds she suffers no side effects from her medications, he apparently ignores the numerous side effects caused by increased dosages of baclofen as offset by the increased spasticity she experiences when the dosages are reduced. A conclusion that the ALJ "is simply not persuaded" is insufficient given the dearth of discussion of the medical records and Claimant's testimony of limitations caused by her condition. (Tr. 18).

Claimant is somewhat redundant in the issues enumerated in her briefing. This Court's discussion of the evidence and the deficiencies in the ALJ's opinion encompasses Claimant's issues nos. 1, 2, 3, and 5 listed above.

### Consideration of the Treating Physicians' Opinions

Claimant also contends the ALJ failed to afford her treating

physicians' opinions controlling weight. Indeed, the ALJ relies almost exclusively upon the opinions of Dr. Blue without discussing the findings of Claimant's numerous treating physicians.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

15

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

This Court is unable to address the propriety of the weight given by the ALJ to each treating physicians' opinion because the ALJ did not discuss the opinions of the vast majority of Claimant's treating physicians. On remand, the ALJ shall discuss the treating physicians' opinions and make the necessary factual findings related to the Watkins' factors.

### Mental Impairments

Claimant also contends the ALJ failed to consider evidence of her mental impairments at step five. The ALJ relies upon the

16

opinions of agency physicians Dr. Smallwood and Dr. Varghese in reaching the conclusion that her mental impairments of depression and anxiety are not severe. (Tr. 16-17). He characterizes Claimant's condition as "only a slight abnormality having such a minimal effect on her that they will not interfere with her ability to engage in basic work activity, irrespective of her age, education, and work experience." (Tr. 19).

The ALJ only discussed the findings of non-treating, non-examining physicians in rejecting the severity of Claimant's mental impairments - both independently at step two and combined with other impairments at step five. These opinions are "of suspect reliability" based upon these physicians' "limited contact and examination." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). On remand, the ALJ should adequately develop the record on this issue by appointing a consultative mental health professional to evaluate the effect of Claimant's medically documented and treated depression and anxiety upon her RFC.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is

**REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 26th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE